IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>DEVIN MICHAEL TEW,<br><br>     Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTIONS IN LIMINE REGARDING FDA TESTING<br><br>Case No. 2:24-cr-00075-JNP<br><br>Chief District Judge Jill N. Parrish |

Defendant Devin Michael Tew raises two related motions in limine related to testing conducted by Federal Food and Drug Administration ("FDA") Chemist Allison Reimer in 2026. His first motion seeks to exclude any testimony regarding the results of the 2026 testing under Rules 402 and 403 and his second motion seeks to preclude Reimer from providing expert testimony about her results under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).[1] ECF No. 87 ("Def.'s First Mot. in Limine"); ECF No. 89 ("Def.'s Second Mot. in Limine"). The court held an evidentiary hearing on these motions where both parties solicited testimony from witnesses and presented documentary evidence. ECF No. 134 ("Hr'g"); ECF No. 135 ("Hr'g Witness & Ex. List"); ECF No. 136 ("U.S.'s Hr'g Exs."); ECF No. 137 ("Def.'s Hr'g Exs."). After considering the evidence and the parties' briefing, the court concludes that both motions must be denied.

---

[1] All references to rules are to the Federal Rules of Evidence.

**BACKGROUND**

Before turning to Tew's motions, the court first provides some additional background regarding the FDA testing based on evidence presented at the *Daubert* hearing, which included testimony from Reimer and another FDA Chemist, James Turner.

In 2019, the FDA obtained 31 "bottles labeled in part 'PoppySeed Wash' . . . containing what appeared to be poppy seeds" for testing. ECF No. 136-2 ("U.S's Hr'g Ex. 2") at 1. In 2020, Turner tested poppy seeds from these bottles for morphine, codeine, and thebaine. ECF No. 136-1 ("U.S's Hr'g Ex. 1"). He first conducted a qualitative test, which determined that the three chemicals were present in the samples but provided no information regarding their concentration. He then performed additional quantitative testing, which was the focus of his final report. U.S's Hr'g Ex. 2. He concluded that the samples did not contain sufficient concentrations of morphine to yield quantitative results. Importantly, this result does not necessarily mean that the samples contained no morphine; rather, the concentration simply fell below the threshold necessary for reliable quantitative testing. Turner's quantitative testing did detect non-zero concentrations of codeine and thebaine in all the samples he tested. But these quantitative measurements reflected large degrees of uncertainty.[2] This means that future quantitative tests of samples extracted from the very same poppy seeds likely would detect very different concentration levels, and in some instances, would fail to find any quantitatively detectable concentrations of codeine or thebaine. *See* U.S's Hr'g Ex. 2 at 2.

---

[2] This is unsurprising because the opium latex coating the poppy seeds—which is the source of all three chemicals—is distributed unevenly.

In 2026, pursuant to the FDA's request, Reimer conducted additional testing. ECF No. 137-5 ("Def.'s Hr'g Ex. 5"). She randomly chose six unused bottles from the original 31 and followed the instructions on the bottles for making poppy seed tea. Pursuant to FDA instructions, she only performed qualitative testing on the tea that she produced. In all tested samples of tea, she found that morphine, codeine, and thebaine were present.

## DISCUSSION

### I.    *Daubert* Motion

First, the court analyzes Tew's *Daubert* motion. Under the framework articulated in *Daubert* and codified in Rule 702, the court must function as a gatekeeper and ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); FED. R. EVID. 702 (requiring that the party offering expert testimony prove "that it is more likely than not that" the expert's opinion satisfy various reliability requirements and "will help the trier of fact to understand the evidence or to determine a fact in issue."). Tew challenges both the reliability and the relevance of Reimer's potential expert testimony.

On reliability grounds, Tew's *Daubert* motion raised three distinct challenges to Reimer's testing: (1) it is inconsistent with the earlier 2020 testing; (2) it is insufficiently reliable because the FDA could have conducted additional quantitative testing; and (3) it is biased because it was performed for the purpose of favorable litigation. Def.'s Second Motion in Limine at 5–8. The court discusses each in turn.

Regarding the first challenge, the *Daubert* hearing clearly demonstrated that the 2020 and 2026 testing are consistent with one another. In 2020, Turner found through qualitative testing that morphine, codeine, and thebaine were all present in the poppy seeds; and Reimer's testing of the

poppy seed tea reflected this same result. The fact that the poppy seeds contained concentrations of morphine that were too low for Turner to quantify is not necessarily inconsistent with Reimer's conclusion that morphine was present in the poppy seed tea. Similarly, the uncertainty regarding the quantitative levels of codeine and thebaine in Turner's quantitative testing does not necessarily refute Reimer's qualitative findings. Indeed, Tew's briefing after the *Daubert* hearing appears to concede this point. ECF No. 141 ("Def.'s Hr'g Br.").

However, Tew's second challenge—that Reimer's 2026 findings are insufficiently reliable because she failed to include any quantitative testing in 2026—remains colorable. By failing to engage in additional quantitative testing, Reimer forewent the opportunity to acquire additional confirmation and context regarding her qualitative results. For example, if Reimer had found detectable levels of the chemicals through independent quantitative testing, this would help rule out the possibility that the qualitative testing had returned a false positive. And if quantitative testing had found significant levels of the chemicals, this would decrease the probability that the chemicals were introduced through contamination from human manipulation or six years of storage.

But Reimer's failure to engage in additional quantitative testing does not render her methodology unreliable under *Daubert* and Rule 702—and thus this failure goes to weight rather than admissibility. *See United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008) ("Once a court is satisfied that the methodology is generally reliable, suggestions that the witness should have engaged in additional testing to achieve certainty in his or her conclusions are matters going to the weight of the opinion, not its admissibility."); *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1236 & n.2 (10th Cir. 2005). Indeed, Reimer's qualitative testing appears to easily satisfy the

specific reliability requirements articulated in Rule 702 and *Daubert*, and the mere availability of additional testing—which is the crux of Tew's argument—does not compel a different result.

Tew's third challenge, alleging bias of Reimer and the FDA more generally, similarly goes to weight rather than admissibility. Reimer testified under oath that she randomly picked samples and received no pressure from the FDA to return particular findings. Based on this representation, the court concludes that Reimer's testing is sufficiently reliable to pass muster under *Daubert* and Rule 702.[3] Any remaining questions regarding Reimer's credibility and objectivity are properly left to the jury. *See, e.g.*, *Long v. E. New Mexico Univ. Bd. or Regents*, No. CV 13-380 RB/SMV, 2015 WL 13665401, at *4 (D.N.M. Mar. 4, 2015) ("Credibility issues are for the jury to determine, not the Court, and not during a *Daubert* challenge."); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) ("A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy.").

Separately, Tew argues that Reimer should be excluded from providing expert testimony because the results of her 2026 testing are insufficiently helpful to the jury to satisfy Rule 702. Def.'s Second Motion in Limine at 8–9; Def.'s Hr'g Br. at 3–4. *See Bitler*, 400 F.3d at1234 (10th Cir. 2005) ("A trial court must look at the logical relationship between the evidence proffered and

---

[3] Recent amendments to Rule 702 clarify that the court must find by a preponderance of evidence that the relevant reliability factors are satisfied. When the court's Rule 702 determination is based on witness testimony, it must make a threshold credibility determination to determine what weight to give the testimony. Caselaw suggesting otherwise relies on a now-improper interpretation of the Federal Rules of Evidence under which the proponent of expert evidence was only required to offer enough proof to support a jury finding of reliability. *See* FED. R. EVID. 702 advisory committee's notes to the 2023 amendment ("[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)."). In any event, the court finds that Reimer's testimony is sufficiently credible for the government to satisfy the Rule 702 reliability requirements by a preponderance of the evidence.

the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'") (quoting *Daubert*, 509 U.S. at 591). But at this stage, it appears that Reimer's testimony will be helpful. Most importantly, Reimer's testimony likely will be probative as to whether Tew's products "may be used to manufacture a controlled substance or listed chemical," which is a crucial aspect of what the government must prove. 21 U.S.C. § 843(a)(6). To be sure, Tew does raise legitimate concerns that the probative value may be limited because (1) the testing was conducted after Tew's bottles were stored for six years and (2) the testing is consistent with the possibility that the poppy seed tea only contained trace amounts of controlled substances. *See* Def.'s Hr'g Br. at 3–4. But the court does not find that these concerns suffice to render Reimer's proposed testimony unhelpful.

Thus, the court DENIES Tew's motion in limine to exclude Reimer from offering expert testimony under Rule 702.

## II.      Rules 402 and 403 Motion

On similar grounds, Tew moves to preclude the government from introducing evidence regarding Reimer's 2026 qualitative testing under Rules 402 and 403. Def.'s First Mot. in Limine.

Invoking Rule 402, Tew argues that the "[i]dentification of controlled substances in the tea [after Tew's products were stored for] six years" is irrelevant because it does not necessarily mean that tea produced in a timely manner would contain controlled substances. *Id.* at 3; Def.'s Hr'g Br. at 3. But this again goes to weight, not admissibility. As a matter of common sense, the fact that Tew's products produced controlled substances after six years in storage plausibly increases the

likelihood that his products could have also produced controlled substances upon delivery. Tew fails to present any scientific evidence refuting this logical inference.

With respect to Rule 403, Tew argues that the 2026 testing is unfairly prejudicial because it only included qualitative findings and did not include corresponding quantitative results. Def.'s First Mot. in Limine at 3–4; Def.'s Hr'g Br. at 3–4. But, as explained above, Reimer's failure to conduct quantitative testing does not necessarily render her testing unreliable. To the contrary, there is evidence that her methodology was sound and that she performed testing in an impartial manner. In any event, it is certainly premature to exclude Reimer's testing under Rule 403 when so many of the material considerations—both with respect to its probative value and its unfair prejudice—may depend on developments at trial.

Therefore, the court DENIES Tew's motion in limine to exclude testimony regarding Reimer's testing results under Rules 402 and 403.

## CONCLUSION AND ORDER

For the reasons above, Tew's motions in limine regarding the 2026 FDA testing are DENIED.


DATED April 22, 2026

BY THE COURT

Jill N. Parrish
United States District Court Judge