IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEVIN MICHAEL TEW,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR PRELIMINARY ORDER OF FORFEITURE**<br><br>Case No. 2:24-cr-00075-JNP<br><br>Chief District Judge Jill N. Parrish |

On June 11, 2026, the United States moved for the court to enter a Preliminary Order of Forfeiture for certain property held by Defendant Devin Michael Tew. *See* ECF No. 196. For the following reasons, the court GRANTS the motion.

## BACKGROUND

On March 6, 2024, the United States charged Mr. Tew with the unlawful possession of drug manufacturing paraphernalia in violation of 21 U.S.C. § 843(a)(6). *See* ECF No. 1. The charge stemmed from Mr. Tew selling unwashed poppy seeds within a bottle that was equipped with a seed strainer and that was labeled with instructions for how to make a poppy seed tea. If a buyer followed the instructions on the bottle, the resulting "tea" contained controlled substances such as morphine, codeine, and thebaine.

The indictment stated that if the United States secured a conviction against Mr. Tew, it would seek forfeiture of any (1) property constituting, or derived from, any proceeds Mr. Tew

obtained, directly or indirectly, as a result of the offense and (2) property used, or intended to be used, in any manner or part, to facilitate the offense under 21 U.S.C. § 853(a). ECF No. 1.

On April 30, 2026, a jury found Mr. Tew guilty. *See* ECF No. 168.

**LEGAL STANDARD**

"As soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). The preponderance of the evidence standard applies to this nexus finding. *United States v. Dermen*, 143 F.4th 1148, 1226 (10th Cir. 2025), *cert. denied*, 146 S. Ct. 1622 (2026).

"The court's determination may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). Hearsay evidence is generally admissible in a forfeiture proceeding. *Dermen*, 13 F.4th at 1228.

"If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the order without regard to any third party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A).

**ANALYSIS**

Mr. Tew was convicted of the unlawful possession of drug manufacturing paraphernalia in violation of 21 U.S.C. § 843(a)(6). Under 21 U.S.C. § 853, a person convicted of violating 21

U.S.C. § 843(a)(6) "shall forfeit to the United States" (1) "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation" and (2) "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853(a)(1)–(2).

On August 4, 2026, the court held a forfeiture hearing, at which both parties were able to provide evidence and argument. *See* Fed. R. Crim. P. 32.2(b)(1)(B) ("If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.").

The United States requests the court enter an order forfeiting various property. The court considers each specific piece or group of property separately.

## I. Money in Accounts

Mr. Tew began selling the bottles in 2018, to great success. Between January 1, 2018, and Mach 28, 2021, records for Mr. Tew's Shopify account (which was connected to his poppy seed wash business) indicated that he had gross sales of $506,152.89. *See* ECF No. 196 at 5. The proceeds in his Shopify account were transferred into both PayPal accounts and also bank accounts. *See id.* at 6. The PayPal accounts also received proceeds from unrelated transactions in which Mr. Tew shipped his sperm to various individuals. *Id.*

### A. The PayPal Accounts

Three PayPal accounts were connected to the sperm donation transactions, and the court refers to them based on the last four digits of the account numbers: the PayPal 5848 Account, the PayPal 3845 Account, and the PayPal 5821 Account. *Id.*

The PayPal 5848 Account was used exclusively for the sperm donation transactions. Transactions from April 23, 2019, to June 24, 2020, totaled $4,934.96. *Id.* There are no recorded withdrawals from this account.

The PayPal 3845 Account was used for both the sperm donation transactions and the poppy seed wash business. *Id.* at 7. Forty-one transactions between December 27, 2019, and April 4, 2020, connected to the sperm donations, total $4,209. *Id.* Over six hundred transactions between December 17, 2019, and April 4, 2020, connected to the poppy seed wash business, total $83,747.85. *Id.* Records indicate that there were numerous credit card withdrawals from this account between December 30, 2019, and September 2, 2020, totaling $12,574.54. *Id.* at 8.

The PayPal 5821 Account was also used for both endeavors. Five transactions were connected to the sperm donations, totaling $5,655. Over twenty-five hundred transactions connected to the poppy seed wash business total $311,083.93. *Id.* Records indicate that there were numerous credit card withdrawals, totaling $9,306.07, as well as cashed check withdrawals, totaling $265,090. *Id.* at 10.

In sum, $14,798.96 worth of PayPal transactions were connected to the sperm donations, and $394,831.78 worth of PayPal transactions were connected to the poppy seed wash business. *Id.* at 11. The United States is not seeking forfeiture of any assets in these PayPal accounts, but it does rely on this financial trail to show a nexus between other proceeds and the offense.

**B. The JP Morgan Chase Bank Account**

At some point, PayPal locked Mr. Tew's accounts. *Id.* Mr. Tew then switched to using a bank account held in the name of his employee, Tina Kirkman. *Id.* at 12. Ms. Kirkman was hired to manage the finances of the poppy seed wash business, and in exchange, she was paid one percent of all funds transferred through her account. *Id.* For this job, she used a JP Morgan Chase bank account that she opened on October 30, 2020. *Id.* Based on the account number, the court refers to this account as the Chase 9387 Account. *Id.*

Per Mr. Tew's instructions, Ms. Kirkman would make frequent cash withdrawals, but she would keep the withdrawals to less than $10,000 to avoid inviting questions. *Id.* After withdrawing the money, she would often place the money in a basket or envelope in Mr. Tew's office space. *Id.* She would sometimes hand over the cash directly to Mr. Tew at other locations. *See id.* at 13.

Between November 4, 2020 and March 19, 2021, the Chase Account 9387 received $467,133.52 that was traced to Mr. Tew's Shopify account tied to poppy seed wash sales. The Chase Account also received $4,520 from other sources. *Id.* at 13. In that same period, records show $407,772.51 was withdrawn, in near $10,000 increments. *Id.* Eventually, this activity led to the closure of the account, at which point Ms. Kirkman withdrew $48,000 in cash that she gave to Mr. Tew. *Id.* at 14. The United States is not seeking forfeiture of any assets in this account, but it does rely on this financial trail to show a nexus between other proceeds and the offense.

### C. The Bank of America Bank Account

Ms. Kirkman then opened a new account at Bank of America in March 2021, which the court will refer to as the Bank of America 2016 Account. *Id.* The proceeds from the Shopify account were re-routed to this new account, and between March 26, 2021, and June 7, 2021, records show a $100 deposit from Kirkman, a $75,000 deposit on May 24, 2021, and $195,634.50 from Shopify related to poppy seed wash sales. *Id.* The $75,000 deposit related to a wire transfer that Mr. Tew coordinated to supplier JJ Nuts for ten pallets of poppy seeds. *Id.* at 14–15. Records for the Bank of America account detail $234,924.25 worth of withdrawals, including $19,502 cash withdrawals and $188,730 for purchases from JJ Nuts. *Id.* at 15.

On July 2, 2021, federal agents executed a seizure warrant on the account. *Id.* at 20. On July 8, 2021, the bank turned over $89,857.36. *Id.*

The United States seeks forfeiture of the $89,857.36. At the forfeiture hearing, Mr. Tew did not contest that this money was subject to forfeiture, and the court finds that the United States has established a nexus between it and the offense.

## II. The Cash in the Bedroom

On June 30, 2021, federal agents executed a search warrant on a bedroom belonging to and used by Mr. Tew. *Id.* at 16. Agents found $111,534.34 worth of cash in various places in the bedroom: the bedroom table ($3,600), the bedroom in general ($4,500), the top of a table ($1,203), a closet ($656.97, $1,529, and $45.37), and another closet ($100,000). Mr. Tew admitted that cash from his business that he did not spend on his business was stored in his room. *Id.* at 16.

Mr. Tew argues that the United States cannot establish that this cash was directly connected to any illegal activity. ECF No. 199 at 6. First, Mr. Tew finds fault with the United States relying on hearsay statements made by Ms. Kirkman that explain that Mr. Tew had her make frequent cash withdrawals from the bank accounts. Mr. Tew notes that Ms. Kirkman has since passed away, and accordingly, she is not able to be cross examined and the court is unable to assess the reliability of her statements. Second, Mr. Tew argues that even if the court were to consider her statements, they do not prove that the cash in the bedroom was in fact that same cash that was withdrawn. *Id.* at 7. For example, some of it may have been derived from the sperm donations.

The court, considering all the evidence, finds that the United States has established the requisite nexus between the majority of the cash in the bedroom and the offense. The evidence shows that Mr. Tew transferred proceeds from his poppy seed wash business into various accounts and that Mr. Tew, sometimes through Ms. Kirkman, withdrew those proceeds as cash that he kept in his bedroom.

The court excludes $9,864 from this total, reflecting the amounts connected to sperm donations in the PayPal 3845 Account ($4,209) and the PayPal 5821 Account ($5,655). The court need not exclude the value of the PayPal 5848 Account ($4,934.96) because there were no recorded withdrawals from the account.

**III. Precious Metal Coins**

Mr. Tew sometimes purchased precious metal coins using the Chase 9387 Account and the Bank of America 2016 Account. Records show $18,011.39 in expenditures from those accounts to two e-commerce sites that deal in the buying and selling of precious metals. ECF No. 196 at 17. Records from the PayPal 5821 Account also note $6,213.89 in transactions with those same websites. *Id.* at 18.

During the execution of the June 30, 2021 search warrant, federal agents found the following in the master bedroom: (1) a box containing 3 black plastic totes of various gold, silver, and copper coins; (2) twenty-six gold-colored collectible coins and one silver collectible coin on a desk; (3) various copper collectible coins in the closet; (4) a black tote filled with collectible coins; (5) ten silver-colored coins and one gold-colored coins on a table; (6) various Canadian pennies; and (7) various Canadian nickels. *Id.* at 18–19.

The United States seeks forfeiture of these coins. It flags in its motion that the indictment described these assets as only "valued at $18,011."[1] *Id.* at 1. It asserts that a February 16, 2022 appraisal found that the estimated fair market value of the coins was $35,576. *Id.*

---

[1] The United States had not yet identified the additional $6,213.89 that Mr. Tew spent on coins from the PayPal 5821 Account. ECF No. 200 at 9.

Mr. Tew argues that the accounts contained proceeds from his other businesses and that it is thus impossible to reliably ascertain from what proceeds the coins were purchased. ECF No. 199 at 9. He also argues that there is no connection between the offense and the growth in value between the recorded transactions of $24,225.28 ($18,011.39 and $6,213.89) and the 2022 market value of $35,576.

The courts finds, based on a preponderance of the evidence, that the coins are property derived from the proceeds of Mr. Tew's offense. Contrary to Mr. Tew's argument, the appreciation in value of the coins is also subject to forfeiture. That appreciation in value continues to be "derived" from the proceeds of his offense. *See* 21 U.S.C. § 853(a)(1).

**IV. Electric Bicycle**

Federal agents also found an electric bike during the June 30, 2021 search. Mr. Tew admitted to buying the electric bike, and records indicate funds from the Bank of America 2016 account were sent to Luna Cycles. ECF No. 196 at 19.

Mr. Tew does not contest that the bike is subject to forfeiture, and the court finds that the United States has established a nexus between the bike and the offense.

**V. Firearms**

Eight firearms were also found in the bedroom by agents during the June 30, 2021 search. *Id.* Mr. Tew admitted that he used proceeds from his business to buy some of the guns. *Id.* at 20. Six of the guns were purchased between June 22, 2020, and May 22, 2021. *See id.* at 19. Two of the guns were purchased at some other point prior. *See id.*

Mr. Tew argues that the United States has not met its burden in establishing a nexus for the firearms, and he specifically highlights that the United States has not identified the date of purchase for two of the guns. ECF No. 199 at 10.

The court finds that the United States has established the requisite nexus for six of the eight guns. The United States has not established a nexus for the two guns that were purchased at an unknown date: a Trailblazer Firearm 22 LR Lifecard Pistol (Serial Number A1324292) and a Sig Sauer P365 Pistol (Serial Number 66A664192).

## VI. Poppy Seeds

Finally, federal agents also seized various poppy seeds during the June 30, 2021 search. ECF No. 196 at 20. The haul included various containers of poppy seeds in two storage units as well as poppy seeds at his home and office location. *Id.* at 21.

Mr. Tew argues that the United States has not established that ten pallets of poppy seeds found at one of the storage units were used in the poppy seed wash business. For example, he asserts he also had a bulk poppyseed business. ECF No. 199 at 11. But as the United States points out, these ten pallets were purchased using funds from the Bank of America account. That account was funded by his poppy seed tea business. The court thus finds that the United States has established a nexus between the seized poppy seeds and the offense.

## VII. Substitute Assets

The United States argues that the court should order any asset not subject to forfeiture under 21 U.S.C. § 853(a) to be forfeited as a substitute asset under 21 U.S.C. § 853(p). ECF No. 196 at 27. It notes that the financial records indicate that Mr. Tew obtained at least $506,152.89 in gross sales from his offense, which is more than the value of the property at issue in this motion. It argues that court should find that the United States has shown that one or more acts or omissions of Mr. Tew has caused property (totaling the value of $506,12.89 less the value obtained from the assets forfeited under § 853(a)) to be unavailable for forfeiture.

Section 853(p) allows for the substitution of property in an order of forfeiture when property, "as a result of any act or omission of the defendant," "(A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p).

Mr. Tew responds that the United States has not shown that Mr. Tew is solely responsible for any dissipation in assets. ECF No. 199 at 12. He argues that the government has not proven that the tainted proceeds existed or that Mr. Tew acted in some way to cause them to be unavailable now. *Id.*

The court finds that the remaining contested assets (the funds in the PayPal 3845 Account ($4,209) and the PayPal 5821 Account ($5,655) and the two remaining firearms) are subject to forfeiture as substitute assets. The United States has shown that Mr. Tew received a significant amount of proceeds from his poppy seed wash business, much of which is unaccounted for now. These funds have either been transferred to other parties in the course of Mr. Tew spending or re-investing the money or have been commingled with other property to an extent that it is difficult to distinguish. The court finds that the United States has done its due diligence in attempting to locate those funds, and the remaining contested property is subject to forfeiture.

**VIII. Excessive Fines**

Finally, Mr. Tew argues that the forfeiture of his property is an excessive fine. *Id.* at 12. However, he concedes that if the court is persuaded that some of the confiscated property was derived from the proceeds of his conviction, then his excessive fine argument fails with respect to

that property. ECF No. 199 at 13–14. He then focuses his argument on the ten pallets of poppy seeds.

Because the court finds that the property constituted either proceeds of his offense, was derived from the proceeds of his offense, or is subject to forfeiture as a substitute asset, Mr. Tew's excessive fine argument fails.

**CONCLUSION AND ORDER**

For the above reasons, the court HEREBY ORDERS that the United States' motion for preliminary order of forfeiture is **GRANTED**. ECF No. 196

Based on the government's motion, the defendant's plea of guilty, and the statement in advance of plea, the property to be forfeited (Subject Property) includes:

1. $111,534.34 in U.S. Currency seized from the defendant's bedroom at 2523 W Martingale Circle, South Jordan, Utah, on June 30, 2021;
2. Various coins seized from 2523 W Martingale Circle, South Jordan, Utah, on June 30, 2021, belonging to the defendant including:
    a. A box containing 3 black plastic totes of various gold, silver, and copper coins under the bed (Box 4);
    b. 26 gold colored collectible coins and 1 silver colored collectible coin on a desk (Box 5);
    c. Various copper collectible coins from the closet (Box 5);
    d. A black tote filled with collectible coins (Box 5);
    e. 10 silver-colored coins and 1 gold-colored coin on a table (Box 5);
    f. Various Canadian penny coins; and
    g. Various Canadian nickel coins;

3. The following firearms seized from the defendant on June 30, 2021, at 2523 W Martingale Circle, South Jordan, Utah:

   a. Trailblazer Firearms 22 LR Lifecard Pistol (Serial Number A1324292);

   b. Sig Sauer P365 pistol (Serial Number 66A664192) with two magazines;

   c. Kel-Tec P17 22 LR pistol (Serial Number G1R24 purchased June 22, 2020) with three magazines;

   d. Kel-Tec PMR-30 22WMR pistol (Serial Number WXPQ82 purchased 7/3/2020) with two magazines;

   e. Kel-Tec KS7 12-guage shotgun (Serial Number Q6859 purchased August 12, 2020);

   f. Smith & Wesson M & P 15-22 pistol (Serial Number LAA8105 purchased May 22, 2021);

   g. Smith & Wesson M & P 15-22 pistol (Serial Number TT04926 purchased May 22, 2021); and

   h. Charles Daly Model AR12S 12-guage shotgun (Serial Number 20SA12N-3621 purchased May 22, 2021) with one magazine & carrying handle;

4. $89,857.36 seized from Bank of America Account ending in xx2016; and

5. Any and all poppy seeds and/or poppy straw seized during the course of the investigation.

It is also HEREBY ORDERED:

Pursuant to 21 U.S.C. § 853(a) and Fed. R. Crim. P. 32.2(b), all right, title, and interest in the Subject Property is preliminarily forfeited to the United States of America.

Under Fed. R. Crim. P. 32.2(b)(3), the Attorney General (or designee) is authorized to seize the Subject Property, conduct any discovery proper in identifying, locating, or disposing of the

property subject to forfeiture, and commence an ancillary proceeding under 21 U.S.C. § 853(n) to account for potential third-party interests.

Prior to the Court entering a final order of forfeiture pursuant to Fed. R. Crim. P. 32.2(c)(2) and the United States acquiring clear title to the Subject Property under 21 U.S.C. § 853(n)(7), the government shall comply with the below-outlined provisions regarding the potential interests of third parties in the Subject Property.

Under 21 U.S.C. § 853(n)(1), the United States shall publish notice of this Order on the government's internet website (www.forfeiture.gov) unless publication is unnecessary under Fed. R. Crim. P. 32.2(b)(6)(C). The United States may also, to the extent practicable, provide written notice to any person known to have an alleged interest in the Subject Property.

Under 21 U.S.C. § 853(n)(2), any person, other than the defendant, asserting a legal interest in the Subject Property may, within thirty days of the final publication of notice or receipt of notice, whichever is earlier, petition the Court for a hearing without a jury to adjudicate the validity of his or her alleged interest in the Subject Property.

Under 21 U.S.C. § 853(n)(3), any third-party petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the Subject Property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the Subject Property, any additional facts supporting the petitioner's claims, and the relief sought.

Under Fed. R. Crim. P. 32.2(c)(1)(B), after the disposition of any motion filed under Fed. R. Crim. P. 32.2(c)(1)(A), and before a hearing on the petition, discovery may be conducted in accordance with the Federal Rules of Civil Procedure upon a showing that such discovery is necessary or desirable to resolve factual issues.

Under Fed. R. Crim. P. 32.2(b)(4), this order shall become final as to the defendant at the time of sentencing and shall be made part of the sentence and referenced in the judgment. The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary under Fed. R. Crim. P. 32.2(e).

Signed August 20, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge